**Federal Defenders**
**OF NEW YORK, INC.**

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara L. Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

October 14, 2026

**By ECF and Email**
Hon. Henry J. Ricardo
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

**Re:** ***United States v. Aaron Moises Betancourt-Rojas*, 26 Mag. 4201 (UA)**

Dear Judge Ricardo:

I write without objection from the Government to request that the Court schedule a change of plea hearing in this matter pursuant to Federal Rule of Criminal Procedure 58(c)(2). Mr. Betancourt-Rojas is charged with one count of illegal entry, a class B misdemeanor, in a criminal complaint filed in the Western District of Texas. He was arrested on October 8 in the Southern District of New York and detained on a Rule 5(c)(3) affidavit. He now wishes to waive venue and plead guilty in this District.

Because Mr. Betancourt-Rojas is charged with a petty offense and a non-incarceratory sentence is appropriate, Rule 58(c)(2) permits his case to be resolved in the Southern District of New York. Moreover, although the Government's consent is not required for the Court to grant the instant motion, the Government has no objection to Mr. Betancourt-Rojas waiving venue and pleading guilty in this District, and it agrees that a non-incarceratory sentence is appropriate. Accordingly, the Court should adjourn *sine die* the Rule 5(c)(3) identity hearing currently scheduled for October 22, 2026, schedule a change of plea hearing to take place at the Court's earliest convenience,[1] and permit Mr. Betancourt-Rojas to waive venue and plead guilty in this District.

## I. Background

On the morning of October 8, 2026, Aaron Moises Betancourt-Rojas was arrested while leaving his home. Later that day, he was presented in the Southern District of New York on a complaint and warrant out of the Western District of Texas, charging one count of misdemeanor illegal entry under 8 U.S.C. § 1325(a)(1). Mr. Betancourt-Rojas consented to detention and requested an identity hearing pursuant to Rule 5(c)(3). He has been detained at MDC Brooklyn since then.

The Western District of Texas complaint that led to Mr. Betancourt-Rojas's arrest, which was filed on March 7, 2025, alleged that he had unlawfully entered the United States on or about

[1] Defense counsel and the Government are available on Friday, October 16 except for 12:00 to 2:00 p.m., Monday, October 19, except for 10:30 a.m. to 12:30 p.m., or Wednesday, October 21, in the afternoon.

September 17, 2022 – two-and-a-half years earlier. At the time of his arrest in New York, Mr. Betancourt-Rojas had a pending asylum claim and valid work authorization, and he had been following the directives of immigration authorities.

Mr. Betancourt-Rojas now wishes to waive venue and plead guilty to the sole count of the Western District of Texas complaint – misdemeanor illegal entry – here in the Southern District of New York, the district where he was arrested and where he resides.

## II. Rule 58(c)(2) permits defendants charged with misdemeanor illegal entry to waive venue and plead guilty in the district of arrest.

An individual violates 8 U.S.C. § 1325(a)(1) when, as an "alien," he "enters or attempts to enter the United States at any time or place other than as designated by immigration officers." Illegal entry carries a maximum sentence of six months' imprisonment or a fine, making it a class B misdemeanor and a "petty offense." *See* 18 U.S.C. § 19 (Class B misdemeanors are petty offenses); *id.* § 3559(a)(7) (offenses punishable by more than thirty days' imprisonment, but not more than six months' imprisonment, are class B misdemeanors). As a petty offense, illegal entry is governed by Federal Rule of Criminal Procedure 58 and may be prosecuted by complaint. Fed. R. Crim. P. 58(b)(1).

Rule 58 provides that, "in a case involving a petty offense for which no sentence of imprisonment will be imposed," a defendant may waive venue and plead guilty in the district of arrest. Fed. R. Crim. P. 58(a)(2). The rule sets forth the following procedure:

> **(2) Waiving Venue.**
>
> **(A) Conditions of Waiving Venue**. If a defendant is arrested, held, or present in a district different from the one where the indictment, information, complaint, citation, or violation notice is pending, the defendant may state in writing a desire to plead guilty or nolo contendere; to waive venue and trial in the district where the proceeding is pending; and to consent to the court's disposing of the case in the district where the defendant was arrested, is held, or is present.
>
> **(B) Effect of Waiving Venue**. Unless the defendant later pleads not guilty, the prosecution will proceed in the district where the defendant was arrested, is held, or is present. The district clerk must notify the clerk in the original district of the defendant's waiver of venue. The defendant's statement of a desire to plead guilty or nolo contendere is not admissible against the defendant.

Fed. R. Crim. P. 58(c).

The Government's consent is not necessary for a Court to permit a defendant to waive venue and plead guilty in the district of arrest. *See id.* (Advisory Comm. Notes to 1990 Addition) ("In order to maintain a streamlined and less formal procedure which is consistent with the remainder of the Rule, subdivision (c)(2) does not require the formal 'consent' of the United States Attorneys involved before a waiver of venue may be accomplished."). Rather, all that is required is the

defendant's written notice and a determination by the Court that the charge is a petty offense for which no sentence of imprisonment will be imposed.

### III. The Court should permit Mr. Betancourt-Rojas to waive venue and plead guilty in the Southern District of New York.

Mr. Betancourt-Rojas satisfies the requirements of Rule 58. He may therefore declare that he intends to plead guilty to the petty offense with which he is charged in the Western District of Texas, waive venue, and consent to this Court's disposition of the case.[2]

Mr. Betancourt-Rojas is charged with a petty offense in the Western District of Texas and was arrested in the Southern District of New York. Fed. R. Crim. P. 58(c)(2)(A). By submitting this motion, Mr. Betancourt-Rojas is providing written notice of his desire to plead guilty, waive venue and trial, and consent to the disposition of his case in this district. *Id.* The only issue to be resolved is whether the Court will impose a sentence of imprisonment. Fed. R. Crim. P. 58. Since a non-incarceratory sentence is warranted in this case, the Court should grant Mr. Betancourt-Rojas's waiver request and dispose of the complaint in this district.

Because this is a petty offense, the typical sentencing procedures do not apply. There is no requirement of a presentence investigation report, and the United States Sentencing Guidelines are inapplicable. *See* U.S.S.G. § 1B1.9; Fed. R. Crim. P. 32(c)(1)(A)(ii). Rather, Rule 58 contemplates only that "the court must give the defendant an opportunity to be heard in mitigation and then proceed immediately to sentencing." Fed. R. Crim. P. 58(c)(3).

Nevertheless, sentencing in this matter is still governed by 18 U.S.C. § 3553(a), which provides that the Court must impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes of punishment: retribution, incapacitation, deterrence, and the provision of correctional and rehabilitative services in the most effective manner. 18 U.S.C. § 3553(a). In determining the appropriate sentence, the Court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, and the need to avoid unwarranted disparities. *Id.* Here, the § 3553(a) factors strongly support a non-incarceratory sentence for Mr. Betancourt-Rojas.

[redacted]

[redacted]

[2] This motion may be decided, and Mr. Betancourt-Rojas's guilty plea be accepted and sentence imposed, either by this Court or any other magistrate judge. *See* 28 U.S.C. § 636(a)(4) (magistrate judge has "the power to enter a sentence for a petty offense"); Fed. R. Crim. P. 58(b)(3)(A) (permitting guilty plea before magistrate judge).

[redacted]

On September 17, 2022, [redacted], Mr. Betancourt-Rojas – then 22 – crossed the border from Mexico into the United States with his parents and his 15-year-old nephew and turned himself in to Border Patrol agents in El Paso. From there, Mr. Betancourt-Rojas and his father were separated from his mother and nephew and sent to Tucson, Arizona. There, he was paroled into the country and placed on a bus heading for Washington, D.C., and then to New York, where he and his parents lived in shelters and hotels while looking for permanent housing. That fall, Mr. Betancourt-Rojas also submitted applications for Temporary Protected Status and asylum and appeared as instructed at an ICE check-in, where he provided his phone number and email address and was told that authorities would contact him when he needed to return. He kept ICE apprised of later changes of address.

In New York, Mr. Betancourt-Rojas built a life and a family with Crismary Arrieche, a childhood friend from Barquisimeto. Mr. Betancourt-Rojas quickly took on the role of father to Ms. Arrieche's son [redacted] now four, and a year-and-a-half ago, they welcomed their son [redacted] To support his family, Mr. Betancourt-Rojas spent two years working in construction for [redacted] until last fall, when he sustained injuries during a workplace accident that necessitated surgery and physical therapy. He is currently supporting his family with insurance payments he receives while a lawsuit arising from the accident remains pending.

Without Mr. Betancourt-Rojas, his family is struggling. Ms. Arrieche writes, "He is our family's sole breadwinner. The only source of physical, emotional, and financial help and support in our lives is Aaron." Ex. A, Crismary Arrieche Ltr. Before his detention, he also provided financial and emotional support to his parents. Ex. B, Lily Rojas Ltr. In addition, Mr. Betancourt-Rojas has demonstrated his character by volunteering with the St. Clement's Food Pantry on top of his already significant work and family responsibilities. Ex. C, Seth Sibanda Ltr.

Given the circumstances of Mr. Betancourt-Rojas's offense – [redacted] – and his personal characteristics, including his family responsibilities and lack of criminal history, a non-incarceratory sentence is appropriate. Under these circumstances, any term of imprisonment for this petty offense would be greater than necessary to accomplish the purposes of sentencing under § 3553(a).

---

[3] Diana Roy and Sabine Baumgartner, *Crossing the Darién Gap: Migrants Risk Death on the Journey to the U.S.*, Council on Foreign Relations (July 22, 2024), https://www.cfr.org/articles/crossing-darien-gap-migrants-risk-death-journey-us.

In addition to Mr. Betancourt-Rojas's mitigating personal circumstances and lack of a criminal record, the fact that he will likely spend an unknown amount of time in immigration custody after this case concludes further weighs against a term of imprisonment. It is the defense's understanding that there is an active immigration detainer lodged against Mr. Betancourt-Rojas. The length of that detention, the conditions of his confinement, and the distance he will be from his family while detained are all uncertain. This forthcoming period of immigration detention is a recognized mitigating factor supporting a non-jail sentence. *See, e.g.*, *United States v. Johnson*, 19-Cr-523 (ERK) (E.D.N.Y. July 27, 2020) (granting sentence of time-served based in part on defendant's probable detention while awaiting removal post-sentencing); *United States v. Temoxtle-Alvarado*, 18-Cr-340 (ARR) (E.D.N.Y. Aug. 15, 2018) (same).

Furthermore, a non-incarceratory sentence would not lead to unwarranted sentencing disparities. Over the past year-and-a-half since these cases have begun to arise, numerous people across the Southern and Eastern Districts of New York have been permitted to waive venue and plead guilty in New York City federal courts to illegal entry complaints arising out of the Western District of Texas. To the Federal Defenders' knowledge, all have received non-incarceratory sentences, and no court in either district has rejected a Rule 58 plea under these circumstances. *See United States v. Vega-Pastuna*, 25-MJ-2294 (S.D.N.Y. Sept. 9, 2025) ($25 fine); *United States v. Lantiguez Alvarado*, 25-MJ-259 (E.D.N.Y. Sept. 5, 2025) ($75 fine); *United States v. Ardines James*, 25-MJ-2675 (S.D.N.Y. Sept. 5, 2025) ($25 fine); *United States v. Diaz Aguilera*, 25-MJ-1706 (S.D.N.Y. Aug. 7, 2025) (one-year probation); *United States v. Nunez Estrada*, 25-MJ-235 (E.D.N.Y. Aug. 7, 2025) ($25 fine); *United States v. Garcia*, 25-MJ-237 (E.D.N.Y. July 31, 2025) ($10 fine); *United States v. Quijada*, 25-MJ-227 (E.D.N.Y. July 30, 2025) (conditional discharge and one day of community service); *United States v. Tigasi Ona*, 25-MJ-225 (E.D.N.Y. July 30, 2025) (conditional discharge and one day of community service); *United States v. Armas Gallardo*, 25-MJ-201 (E.D.N.Y. June 27, 2025) (time served). There is no reason to treat Mr. Betancourt-Rojas any differently from those similarly situated defendants.

## IV. Conclusion

The Court has an ample basis to conclude that it will not impose an additional term of imprisonment following Mr. Betancourt-Rojas's guilty plea to the petty offense of illegal entry. Accordingly, since Mr. Betancourt-Rojas satisfies all the conditions of Federal Rule of Criminal Procedure 58(c)(2), the Court should schedule a change of plea hearing, accept his venue waiver and guilty plea, and impose a non-incarceratory sentence. As noted, the Government has no objection to this request. Thank you for considering it.

Respectfully submitted,

____/s/____________

Ariel Werner, Assistant Federal Defender
Federal Defenders of New York
(212) 417-8700

cc: Joseph Stern, Assistant United States Attorney

# EXHIBIT A

October 10, 2026

My name is Crismary Arrieche. I am Aaron Moises's partner and the mother of his two children. Aaron is the most important person in my life. He is a caring and loving husband and a wonderful and attentive father. He is our family's sole breadwinner. The only source of physical, emotional, and financial help and support in our lives is Aaron. He helps me with everything in our home, at our children's schools, and every time we have to go to the hospital. [redacted] Aaron also helps a lot at home. He's the type of man who doesn't wait for you to ask him for help.

Our children have been without him for three days now, and each day has been sadder and harder. My oldest boy asks me, "Mom, is Daddy coming to take me to school?" This is something that hasn't been easy to answer. My youngest son has had high fevers ever since he has been gone; he doesn't even want to eat. [redacted], and my only emotional support is Aaron. He helps me keep it together and take care of our children when I'm going through really tough times. Being without him is very hard for me. He helps his parents, too. He's always there for them. He loves and respects them so much.

Aaron used to work for a construction company. He worked there for a long time until, unfortunately, a year and several months ago, he had an accident and is now disabled. He can't work anymore. He currently receives payments every fifteen days because of the accident. With that money, he supports us and also helps his parents. I don't work, and he's the one who takes care of all the expenses in our home.

I hope you'll read my letter and understand my current situation as a wife and mother. We really need his help. Thank you.[1]

Crismary Arrieche

---

[1] This letter has been translated from Spanish.

# EXHIBIT B

New York

October 9, 2026

Dear Judge,

I respectfully write to introduce myself, Lily Xiomara Rojas Riera, mother of Aaron Moises Betancourt Rojas. My son is an excellent father and son. I have a long medical history, including hypertension. He is my source of both financial and emotional support. He is the one who makes sure I take my medications and pays my medical bills. He also has his own family who depend on him. [redacted]. For these reasons, I implore you to consider the fact that our family has been left helpless without his support.

Your Honor, I am asking you from the heart and for the sake of his children, his partner, and his parents, please show him mercy. His children miss him very much.

Thank you for your time.

Lily Rojas[1]

[1] This letter has been translated from Spanish.

# EXHIBIT C



Re: Aaron Betancourt

To Whom it May Concern:

I have known Mr. Aaron Betancourt for about two years. Since 2024, Mr. Aaron Betancourt has been actively involved, during his free time, in our charitable organization - St. Clement's Food Pantry - which distributes food for those who have difficulties purchasing enough food to avoid hunger.

Our mission is to help those who struggle to meet basic nutritional needs by offering supplementary food so they can be able to have a balanced meal. Critical to our success has been the help that our organization gets from dedicated volunteers like Mr Betancourt, His role generally involved helping us repack food so that it can be distributed to our clients, organizing food items to appropriate shelves and helping off loading food from the delivery trucks.

Mr. Betancourt's commitment and enthusiasm for volunteer work has made a significant contribution to St. Clements Food Pantry.

I would be glad to provide more information if needed.

Sincerely,

Seth Sibanda

[redacted]